## W. C. BELCHER LAND MORTGAGE COMPANY v. ARCH NORRIS.

Decided May 3, 1902.

**1.—Mortgage—Priority—Lease—Notice—Putting on Inquiry.**

Upon making application for a mortgage loan upon land the mortgagor exhibited a clear record title to the land, together with leases executed by him to the parties then in possession of it reciting that they were given in consideration of the lessees releasing claims under prior leases held by them, but not stating by whom the prior leases were executed. They were in fact executed by a person to whom the land had been conveyed by a deed that was not recorded, and of which the mortgagee had no knowledge. Held, that the leases so exhibited were not sufficient to put the mortgagee upon inquiry, and so charge him with notice of the rights of others under the unrecorded deed.

**2.—Assignment of Error—Sufficiency.**

Where the issue involved was that of priority as between a mortgage and an unrecorded deed, an assignment asserting that certain lease contracts exhibited to the mortgagee did not on their face put him on inquiry as to such deed, and that the trial court erred in holding that they did, was sufficient in form to present such question.

Appeal from Comanche. Tried below before Hon. N. R. Lindsey.

*Wm. J. Berne, Jr.,* for appellant.

*G. H. Goodson,* for appellee.

STEPHENS, Associate Justice.—This suit was brought against the W. C. Belcher Land Mortgage Company and others by the appellee to cancel a mortgage on and recover a tract of 160 acres of land in Comanche County, and resulted in a judgment in his favor. The mortgage was made in January, 1900, by S. J. K. Taylor, who appeared from the recorded title to be the owner of the property, to secure the sum of $700 then loaned him by the mortgage company upon the well founded belief that the title was where the record showed it to be, and without any actual knowledge on its part of any adverse claim. Appellee, a minor, deraigned title through a deed of date long prior to the mortgage which had been delivered to his father in his name as a deed of gift, but which had been destroyed by the maker without ever being recorded. G. W. Morgan and J. A. Carson were in possession of the land when the mortgage was executed, having taken possession originally under lease contracts made with the father of appellee for his benefit in August, 1895, each for a term of seven years, which seems to have covered the entire 160 acres, that of Morgan covering 100 acres; but the mortgage company had no knowledge of these leases. In January, 1899, they entered into lease contracts with S. J. K. Taylor, each covering 40 acres of the land in controversy. The one to Morgan, which was a lease for three years, recites the consideration as follows: "For and in consideration of the releasing of any and all portions of any lease heretofore held and now held by G. W. Morgan;" and the one to Carson, which was for four years, recites the consideration as follows: "For the consideration that J. A. Carson, of Comanche County, Texas, will build a three-barbed wire fence on the tract and survey of land hereinafter mentioned, and the further consideration of the said J. A. Carson releasing all his right and interest in and to any leasehold that he may have heretofore acquired and now exercises control of said survey," and concludes with this clause: "It is hereby agreed and understood by and between said parties that the said J. A. Carson shall have all of the wire fence on any portion of lease on said survey by this instrument released unto the said S. J. K. Taylor." When Taylor applied for the loan he exhibited to the mortgage company these written leases, together with his chain of title, which was perfect on its face, stating that the land was occupied by Morgan and Carson as his tenants.

The court held that the leases from Taylor to Morgan and Carson, on account of the recitals quoted above, were on their face sufficient to put a person of ordinary prudence on inquiry "as to the real condition of the Taylor leases themselves, and of the leases said parties were proposing to abandon, and of the real facts of their tenancy and possession, and that a person of ordinary prudence under like circumstances would have made such inquiry," etc.

The correctness of this holding is challenged by the first assignment of error reading: "Lease contracts, executed between Taylor and tenants Morgan and Carson, did not, on their face, put the company on inquiry of Norris' claim. Trial court erred in holding that they did."

We are of opinion that this assignment is sufficient in form, notwithstanding the several objections made to it, and also that it is well taken. We find nothing in the leases exhibited to the mortgage company to suggest that Morgan and Carson were then or had ever been the tenants of appellee or any other adverse claimant. At most they showed a surrender of previous leases as the consideration, in whole or in part, for their execution, and what there was in this to excite suspicion in a person of ordinary prudence we are unable to see. A regular chain of title was exhibited to the mortgage company which showed Taylor to be the absolute owner of the property, and the possession of Morgan and Carson was naturally and reasonably explained by these leases. It would hardly have occurred to any but a suspicious mind, we think, that the leases previously held and surrendered were not in privity with the title of Taylor, for the natural inference of one possessing only the information which the loan company had would be that the parties to the original leases, who alone could abrogate them, had, for reasons satisfactory to themselves, substituted new ones.

Upon this conclusion, therefore, and those of the trial court not in conflict with it, the judgment in so far as it canceled the mortgage is reversed and here rendered in favor of appellant, but as to the other parties will not be disturbed.

*Reversed and rendered in part; affirmed in part.*